# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Christine M. Arguello

Civil Action No. 16-cv-03158-CMA-STV

GREGORY LASHER, as lineal heir to Liam N. McDougal-Lasher (deceased),

    Plaintiff,

v.

REED G. WIPPERFURTH,

    Defendant.

---

## ORDER DENYING PLAINTIFF'S MOTION IN LIMINE

---

Before the Court is Plaintiff's Motion in Limine (Doc. # 31), wherein Plaintiff Gregory Lasher, lineal heir to decedent Liam McDougal-Lasher, requests that this Court exclude certain evidence from trial. Defendant Reed Wipperfurth objects to the motion (Doc. # 33), and for the following reasons, the Court denies it.

## I.    BACKGROUND

Plaintiff brings one claim for relief against Defendant: wrongful death. (Doc. # 1.) That claim stems from an accident in June 2016 where 11-year-old Liam, while crossing Saguache County Road LL6, was struck and killed by a vehicle driven by Defendant. (*Id.*) Plaintiff alleges that the fatality was caused by Defendant's negligent and reckless conduct. (Doc. # 1 at 1–2.) Defendant denies any fault for the accident and claims that Liam suddenly and unexpectedly ran from the side of the road in front of Defendant's vehicle, causing the crash. (Doc. ## 9; 39 at 3.)

The Parties are set for a four-day jury trial to begin on November 5, 2018. In anticipation of trial, Plaintiff filed the instant motion, wherein he requests the exclusion of (1) the non-party status of Ashley Snyder, Liam's mother; and (2) the concluding portion of Defendant's expert Dr. Laura Rieffel's report, wherein she discusses Attention Deficit Hyperactivity Disorder (ADHD) and related mortality rates. As explained below, the Court disagrees that exclusion is warranted in either instance.

## II.     NON-PARTY STATUS OF ASHLEY SNYDER

The Court denies as premature Plaintiff's first request regarding the non-party status of Ashley Snyder. Defendant has not designated Ms. Snyder as a non-party. Nor is there any indication from Defendant's response to Plaintiff's motion that they intend to so designate or to refer to Ms. Snyder as such. To the extent Plaintiff requests the exclusion of any mention of Ms. Snyder at all, the Court denies that request. Defendant's defense appears to be, in part, that Liam unexpectedly ran across the road to return to Ms. Snyder, his mother, when the car struck him. Her presence under those circumstances is relevant to the issues in this lawsuit and references to Ms. Snyder generally will not, therefore, be excluded from trial.

## III.     EXPERT REPORT OF DR. LAURA RIEFFEL

The Court also denies Plaintiff's request to exclude Dr. Rieffel's challenged opinion at trial.

### A. LAW

In reaching this conclusion, the Court was guided by Fed. R. Evid. 702, which imposes on it a gatekeeper obligation to "ensure that any and all scientific testimony or

evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms.,*

*Inc.*, 509 U.S. 579, 589 (1993). Rule 702 provides that a witness who is qualified as an

expert by "knowledge, skill, experience, training, or education" may testify if:

> (a)     the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b)     the testimony is based on sufficient facts or data;
> (c)     the testimony is the product of reliable principles and methods; and
> (d)     the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In determining whether expert testimony is admissible, the Court generally

employs a three-step process. First, it must first determine whether the expert is

qualified "by knowledge, skill, experience, training, or education" to render an opinion.

*United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). Second, if the expert is

sufficiently qualified, the Court must determine whether the proposed testimony is useful

and sufficiently "relevant to the task at hand," such that it "logically advances a material

aspect of the case." *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884, 884 n.2

(10th Cir. 2005). Doubts about whether an expert's testimony will be useful "should

generally be resolved in favor of admissibility unless there are strong factors such as

time or surprise favoring exclusions. The jury is intelligent enough . . . to ignore what is

unhelpful in its deliberations." *Robinson v. Missouri Pac. R. Co.*, 16 F.3d 1083, 1090

(10th Cir. 1994) (internal citations omitted).

Third, the Court examines whether the expert's opinion "has 'a reliable basis in

the knowledge and experience of his [or her] discipline.'" *Id.* (quoting *Daubert*, 509 U.S.

at 592).  "[T]he fact that the experts disagree does not demonstrate that [the expert's]

opinion is not supported by sufficient facts and data."  *U.S. v. Water Supply and Storage

Co.*, No. 06–cv–01728–REB–MJW, 2008 WL 1930602 (D. Colo. May 1, 2008).  Nor is a

disagreement between competing experts a sufficient reason to exclude an expert's

opinion.  *See Arkansas River Power Auth. v. Babcock & Wilcox Power Co.*, No. 14-CV-

00638-CMA-NYW, 2016 WL 9734684, at *6 (D. Colo. Oct. 24, 2016)

The end-goal of any *Daubert* inquiry is always "to make certain that an expert,

whether basing testimony upon professional studies or personal experience, employs in

the courtroom the same level of intellectual rigor that characterizes the practice of an

expert in the relevant field."  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152

(1999).

## B.  ANALYSIS

Dr. Rieffel's challenged opinion reads as follows:

> Attention Deficit Hyperactivity Disorder is a group of
> disorders that are understood to have as their basis a
> problem with impulse control and self-regulation, which are
> skills contained within the spectrum of executive function.
> Russell Barkley, Ph.D. (www.RusssellBarkley.org), an
> eminent researcher and author within the field of Attention
> Deficit Disorders describes ADHD as involving "significant
> problems with sustained attention, persistence towards
> goals, resisting distractions along the way, inhibiting
> excessive task-irrelevant activity (hyperactivity), and
> inhibiting actions, words, thoughts, and emotions that are
> either socially inappropriate to the situation or inconsistent
> with one's longer term goals and general welfare." ADHD is
> known to be associated with increased mortality rates, and
> individuals with comorbid rates are driven mainly by deaths
> from unnatural causes, such as accidents (Dalsgaard, et al.,
> 2015). Sadly, given the range of difficulties associated with
> ADHD, it is quite possible that Liam, in an excited state to

4

return to his mother, momentarily lost sight of the danger of the oncoming vehicle, focused instead on the need for immediate gratification and urgency that is so characteristic of ADHD. Although he was on medication at the time, Liam's early diagnosis and very persistent and significant symptoms suggest he was on the very severe end of the ADHD spectrum, making his momentary impulsive action even more likely.

Plaintiff does not argue that Dr. Rieffel is unqualified to serve as an expert or that her opinion is irrelevant to the issues in this case. Instead, he asserts that the opinion is unreliable because it is not supported by sufficient facts and data. In support of that assertion, Plaintiff highlights nothing more that the opinion of Plaintiff's own expert, Dr. Michael Freeman, wherein Dr. Freeman attempts to discredit and assign defects to Dr. Rieffel's conclusions about ADHD and mortality rates. In other words, Plaintiff's entire argument for exclusion under Rule 702 is based on Dr. Freeman's disagreement with Dr. Rieffel's conclusions. Plaintiff's argument with respect to ensuing prejudice is also based solely on Dr. Freeman's assertions that Dr. Rieffel is wrong and her statistical analysis is flawed.

The fact that Dr. Freeman disagrees with Dr. Rieffel regarding ADHD and morality rates, however, does not render Dr. Rieffel's opinion unreliable or prejudicial. *See Water Supply and Storage Co.*, 2008 WL 1930602 ("The fact that the experts disagree does not demonstrate that [the expert's] opinion is not supported by sufficient facts and data"). Nor is that disagreement alone a sufficient basis for excluding Dr. Rieffel's expert opinion. Although Dr. Freeman's report and conclusions may be used at trial to discredit Dr. Rieffel's report and conclusions, either through direct examination, on cross, or otherwise, Dr. Freeman's conclusions are insufficient at this time to support

excluding Dr. Rieffel's contrary opinions from the jury's review. The Court accordingly denies Plaintiff's request.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion in Limine is DENIED. (Doc. # 31.)

DATED: July 13, 2018                              BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge